# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 3:07-cr-00056 JWS |
| vs. | ) | ORDER AND OPINION |
| PETER KOTT and BRUCE WEYHRAUCH, | ) | [Docket Nos. 78 and 92] |
| Defendants. | ) | |

## I. MOTIONS PRESENTED

At docket 78, defendant Bruce Weyhrauch moves for an order establishing certain legal propositions. Weyhrauch's co-defendant, Peter Kott, has not filed any papers concerning the motion. The United States has filed an opposition at docket 89. At docket 92, Weyhrauch moves for oral argument on his motion at docket 78. Because oral argument would not be of assistance, that request will be denied.

## II. BACKGROUND

Weyhrauch is a lawyer and a former member of the Alaska House of Representatives who represented a district in Juneau. Kott also is a former member of the House who represented a district in Eagle River. The charges against the defendants relate to their activities as legislators.

In Count 1 of the Indictment, Kott and Weyhrauch are charged with conspiracy to commit extortion under color of official right, bribery, and honest services mail and wire fraud in violation of 18 U.S.C. § 371. According to the allegations in Count 1, Kott and Weyhrauch conspired with "COMPANY CEO" and "COMPANY VP" and others known

and unknown to the grand jury. As explained in the court's earlier order at docket 85, COMPANY CEO is Bill J. Allen and COMPANY VP is Richard L. "Rick" Smith.

In addition to the conspiracy charge, Weyhrauch is charged with one count of attempted interference with commerce by extortion induced under color of official right in violation of 18 U.S.C. § 1951(a), one count of bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(b), and one count of honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346. The Indictment also charges Kott with interference with commerce by extortion induced under color of official right in violation of 18 U.S.C. § 1951(a), one count of bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(b), and one count of honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346.

### III. DISCUSSION

Weyhrauch describes the relief he seeks in the following passage :

> In particular, Weyhrauch moves for an order establishing (1) that the government must prove Weyhrauch intended that there be a *quid pro quo* in order to prove the conspiracy to extort and attempted extortion charges, and it follows that whether or not Weyhrauch would have taken the same actions regardless of soliciting the work from VECO is relevant to those charges, and (2) that whether or not Weyhrauch would have taken the same actions regardless of soliciting the work from VECO is also probative of the requisite element of intent to defraud in the mail fraud charge as well as a good faith defense to that charge.[1]

Weyhrauch's motion is focused on the proposition that evidence that he would have discharged his legislative duties, such as casting votes relating to the Petroleum Production Tax ("PPT") that were coincident with the votes VECO's officers desired, in the same manner regardless of benefits sought from VECO is relevant to all three charges against him.[2]

---

[1] Doc. 78 at p. 2.

[2] In addition to conspiracy to commit Hobbs Act extortion and honest services mail and wire fraud, Count 1 also charges a conspiracy to commit bribery in violation of 18 U.S.C. § 666(a)(1)(B); that aspect of Count 1 is not a subject of Weyhrauch's motion.

-2-

**A. Conspiracy To Commit and Attempted Commission of Hobbs Act Extortion**

With respect to those charges relating to Hobbs Act extortion, Weyhrauch suggests that the analysis must start with the Supreme Court's decision in *McCormick v. United States*.[3] The court agrees. In that case, the defendant McCormick was a state legislator charged with five counts of Hobbs Act extortion by extorting payments under color of official right and one count of filing a false income tax return. The jury convicted McCormick on one count of Hobbs Act extortion and the single income tax charge. The Court of Appeals rejected McCormick's argument that the payment made in connection with the Hobbs Act count was a campaign contribution whose receipt did not violate the statute, and the Supreme Court limited its consideration of the Hobbs Act charge to that issue.[4] Justice White's majority opinion made clear that the Court was not considering how the statute would be applied in a context, such as the one at bar, where the charge involved a payment to an elected official which was not a campaign contribution.[5]

Finding fault with the trial court's jury instructions on what would constitute a voluntary campaign contribution, as well as the Court of Appeals' analysis of McCormick's argument on appeal, the majority reversed the Hobbs Act conviction. Justice White noted the possibility that the jury might have found McCormick guilty simply because the payor made a contribution with "any" expectation of benefit.[6] A conviction based on such an understanding would have been inconsistent with the role of campaign contributions in America's version of electoral democracy:

> Serving constituents and supporting legislation that will benefit [them] is the everyday business of a legislator. It is also true that campaigns must be run and financed. Money is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done. Whatever ethical

---

[3]500 U.S. 257 (1991).

[4]*McCormick*, 500 U.S. at 268.

[5]*Id*.

[6]*Id.* at 274.

considerations and appearances may indicate, to hold that legislators commit the federal crime of extortion when they act for the benefit of constituents . . . shortly before or after campaign contributions are solicited and received from [them], is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, "under color of official right." To hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation.[7]

In a dissent joined by Justices Blackmun and O'Connor, Justice Stevens found that the trial court's instructions viewed in their entirety were satisfactory and that the evidence supported a jury verdict on the extortion claim based on payments to McCormick in exchange for his agreement to take certain actions on behalf of those who provided the funds.[8] Justice Stevens then set out what would be required to sustain a conviction:

As I have explained, the crime of extortion was complete when petitioner accepted the cash pursuant to an understanding that he would not carry out his earlier threat to withhold official action and instead would go forward with his contingent promise to take favorable action on behalf of the unlicensed physicians. What he did thereafter might have evidentiary significance, but could neither undo a completed crime nor complete an uncommitted offense. When [McCormick] took the money, he was either guilty or not guilty. For that reason, proof of a subsequent *quid pro quo*–his actual support of the legislation was not necessary for the Government's case. And conversely, evidence that petitioner would have supported the legislation anyway is not a defense to the already completed crime.[9]

The next year in *Evans v. United States*,[10] Justice Stevens wrote for the majority in another case involving prosecution of a elected official charged with Hobbs Act

---

[7]*Id.* at 272.

[8]*Id.* at pp. 281-82.

[9]*Id.* at 283.

[10]504 U.S. 255 (1992).

extortion based on campaign contributions. In *Evans,* the payments to the elected official were made by an undercover FBI agent seeking to have certain property rezoned. Viewing the evidence in the light most favorable to the United States, because Evans had been convicted, the Court assumed "that the jury found that [Evans] accepted the cash knowing that it was intended to ensure that he would vote in favor of the rezoning application . . . . Thus, . . . his acceptance of the bribe constituted an implicit promise to use his official position to serve the interests of the bribegiver."[11] Justice Stevens went on to explain that the agreement was the very *quid pro quo* required by *McCormick*, "because the offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the *quid pro quo* is not an element of the offense."[12] In summary, the Court said: "We hold today that the Government need only show that a public official has obtained a payment to which he is not entitled, knowing that the payment was made in return for official acts."[13]

Some years after *Evans* was decided, in *United States v. Tucker*,[14] the Ninth Circuit had occasion to turn its attention to a case like the one at bar in which the money paid to the public official charged with violating the Hobbs Act was not a campaign contribution. While the government argued that when the payment is not a campaign contribution the statute requires no *quid pro quo*, the Ninth Circuit found it unnecessary to consider that argument, because the court held that the evidence supported a finding that Tucker knew the payments were made in return for official acts. "The government need not show an explicit agreement between Tucker and Macardican; the government

---

[11]*Evans*, at 504 U.S. 257.

[12]*Id.* at 268.

[13]*Id.*

[14]133 F.3d 1208 (9th Cir. 1998).

Case 3:07-cr-00056-JWS   Document 108   Filed 08/14/07   Page 5 of 8

need only show that Tucker received the payment, 'knowing that [it] was made in return for official acts.'"[15]

In its briefing here, the government accurately points out that after *Tucker* it is unclear whether the Ninth Circuit would approve something less than the *quid pro quo* inherent in Weyhrauch's acceptance of a payment knowing that it was made in return for official acts to support a conviction, but it is very clear that the Ninth Circuit would demand no more. Furthermore, the same may be said for the Supreme Court. Given *McCormick* and *Evans*, one cannot say whether a lesser standard would be applied to a Hobbs Act extortion charge where the payment is not a campaign contribution, but one can say that knowing acceptance of the payment is sufficient.

The precise issue, then, with respect to the charges related to the Hobbs Act, is whether Weyhrauch's professed independent support for the same positions supported by VECO is relevant to the question of whether he knew VECO's offer of legal work would be made in exchange for his official acts. Federal Rule of Evidence 401 indicates that evidence which has "any tendency" to make a fact of consequence more or less likely to be true is relevant. What Weyhrauch's independent position on PPT or other issues might be does not shed any light on what Weyhrauch knew about why VECO would offer him legal work, because whether Weyhrauch's motivation to vote the VECO line was pure or impure, VECO's offer of work based on Weyhrauch's voting the "right" way would be given in exchange for doing so. As Justice Stevens put it in *McCormick*, a "thug who extorts protection money cannot defend on the ground that his threat was only a bluff because he would not have smashed the shopkeeper's windows even if the extortion had been unsuccessful."[16] While the court is not equating Mr. Weyhrauch with a common thug, Justice Stevens' comment supports the point that seeking legal work based on voting the "right" way is no less a violation because the legislator would have voted that way in any event.

**B. Honest Services Mail Fraud**

---

[15]*Tucker*, 133 F.3d at 1215 (quoting from *Evans*, 504 U.S. at 268.)

[16]*McCormick*, 500 U.S. at 283.

The issues respecting the intersection between Weyhrauch's "long standing commitment to sensible development of Alaska's natural resources [particularly] a gas pipeline" and the charge in Count 7 have not been adequately briefed. For his part, Weyhrauch begins with the erroneous assumption that because this court gave a jury instruction in *USA v. Anderson*[17] relating to Hobbs Act extortion charges which correctly advised the jury (as demonstrated above) that whether Anderson would have taken the same action regardless of the payments he received means the court would give a similar instruction relating to the mail fraud charge here. From that assumption, Weyhrauch then skips over any discussion of the elements of the mail fraud charge to focus on the concept of a good faith defense. Finally, Weyhrauch relies on Eight Circuit cases rather than Ninth Circuit cases to support his position. The United States' briefing is largely founded on the premise that the significance of the argument about the mail fraud charge is limited to what sort of good faith defense jury instruction might be given. The United States then goes on to point out that Weyhrauch has yet to suggest one. This leads the United States to conclude that it is premature to consider the matter.

The court is concerned that neither party has focused on the fact that an intent to defraud is one of the elements of the mail fraud charge[18] and as such will be one determinant of what evidence is admissible, and what lines of cross-examination will be permitted. That being so, the issue of whether Weyhrauch had intended all along to discharge his official duties just as he did is not something whose consideration should be deferred. Rather, it is something that may profitably be addressed before trial starts. The existing briefing is not adequate to allow the court to do so. For this reason, the court will deny this aspect of defendant's motion without prejudice and direct Weyhrauch to file a renewed motion with respect to the admissibility of evidence of his "long standing commitment to sensible development" and the like within five days from the date of this order. The United States will then have the customary five days to respond.

---

[17]Case No. 3:06-cr-00099 JWS.

[18]Ninth Circuit Model Criminal Jury Instructions, Instruction No. 8.101.

## IV. CONCLUSION

The motion at docket 78 is **DENIED in part and DENIED without prejudice in part** consistent with the discussion above, the request for oral argument at docket 92 is **DENIED**, and **IT IS FURTHER ORDERED** that defendant Weyhrauch shall file a renewed motion respecting the mail fraud charge as discussed above within five days from the date of this order, and the United States shall respond within the customary five days.

DATED at Anchorage, Alaska, this 14th day of August 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE