| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 3:07-cr-00056 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| PETER KOTT and BRUCE WEYHRAUCH, | ) | [Re: Docket Nos. 193 and 195] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. MOTIONS PRESENTED

This order addresses defendant Bruce Weyhrauch's motion seeking to exclude certain evidence at docket 193. This order also addresses the United States' motion seeking an order permitting the admission of certain evidence at docket 195. Responsive briefing was filed at dockets 204, 205, and 206.

## II. BACKGROUND

Defendants Peter Kott and Bruce Weyhrauch are former members of the Alaska Legislature who are charged with a variety of felonies relating to their service as legislators. The Indictment charges each with conspiracy to commit extortion under color of official right, bribery, and honest services mail and wire fraud in violation of 18 U.S.C. § 371. It also charges Kott with interference with commerce by extortion induced under color of official right in violation of 18 U.S.C. § 1951(a), bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(b), and honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346. In addition to conspiracy, the Indictment charges Weyhrauch with attempted interference with

commerce by extortion induced under color of official right in violation of 18 U.S.C. § 1951(a), concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(b), and honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346. Issues pertaining to honest services fraud are the subject of the pending motions.

The United States' trial brief indicated it plans to introduce evidence pertaining to the charges of honest services fraud to show that in violation of Alaska law each defendant failed to disclose a conflict of interest arising from his dealings with VECO and its executives. At the final pre-trial conference on August 30, counsel for defendant Weyhrauch complained that this "failure to disclose" theory should not be presented to the jury, first, because it is an entirely new theory of liability, and second, because as a matter of law, there was no duty to disclose. The court directed the parties to file briefing on the matter as soon as possible.

The parties responded with commendable alacrity. Weyhrauch filed a motion at docket 193 seeking to exclude any argument that state statutes or legislative rules required disclosure of his dealings with VECO. The United States filed a motion at docket 195 seeking admission of evidence related directly to that argument and advocating the more general proposition that honest services fraud may be proved by showing the violation of a duty to disclose. At docket 204, the United States filed a response to Weyhrauch's motion. At docket 205, Weyhrauch filed a response to the government's motion, and Kott did likewise at docket 206.

### III. DISCUSSION

In the motion at docket 193, Weyhrauch asks the court to preclude the United States "from arguing or representing to the jury that state statutes or House rules required Weyhrauch 'to disclose' [his dealings with VECO]."[1] At docket 195, the United States describes the evidence whose admission it asks the court to approve as follows: (1) official legislative ethics publications found in each defendant's possession

---

[1] Doc. 193 at p. 1.

-2-

containing extracts from the Alaska State statutes and hypotheticals relating to their application; (2) a state employee's testimony that legislators customarily acknowledge conflicts, conflicts are officially recorded, but neither defendant disclosed a VECO conflict; (3) a state employee's testimony describing ethics training given to defendants; and (4) testimony showing Weyhrauch was on a legislative committee involved in preparing ethics publications. The United States would offer that evidence to show:

> that both defendants were under a legal duty to disclose to the Alaska State Legislature that they were soliciting and negotiating for jobs and other employment with VECO, and that they never made any such disclosures. Their failure to disclose that relationship is admissible in at least three ways: (1) to prove an intent to defraud through the deliberate concealment of a conflict of interest; (2) to prove an intent to defraud through the knowing violation of a state law; and (3) as consciousness of guilt concerning both defendants' use of their public office for their personal gain.[2]

It is readily apparent that all three of the government's theories supporting admission of the evidence depend upon the existence of a legally recognized duty to disclose the alleged conflict of interest. From the nature of the documents and testimony described (state ethics materials, state employee testimony about state ethics training and practices), it is also clear that the particular evidence which is the subject of the motion at docket 195 relates to a duty to disclose imposed by state, not federal, law. Of course, it is also the alleged state law duty that is the subject of Weyhrauch's motion.

Responding to Weyhrauch's motion, plaintiff points to AS 24.60.030(e)(3) as one source of such a duty. It provides that a legislator may not, "unless required by the Uniform Rules of the Alaska State Legislature, take or withhold official action or exert official influence that could substantially benefit or harm the financial interest of another person with whom the legislator is negotiating for employment." In the government's view, that is exactly what Kott and Weyhrauch were doing. However, the statute itself does not include any requirement for the disclosure of such negotiations; rather, it simply prohibits certain conduct.

---

[2]Doc. 184 at p. 19 (internal citations and explication of authorities cited omitted).

-3-

Case 3:07-cr-00056-JWS    Document 208    Filed 09/04/07    Page 3 of 11

AS 24.60.30(e)(3) is part of a comprehensive series of statutes governing legislative conduct.[3] Within that series, there are several statutes which explicitly create a duty requiring legislators to disclose specific matters. AS 24.60.30(f) imposes an obligation to disclose membership on certain boards. AS 24.60.040 requires disclosure of participation in certain state contracts or leases. AS 24.60.050 imposes an obligation to disclose participation in non-exempt state programs and the receipt of non-exempt state loans. AS 24.60.070 requires a legislator to disclose "the formation or maintenance of a close economic association involving a substantial financial matter with"[4] a supervisor at work, another legislator, a registered lobbyist, or a legislative employee. AS 24.60.100 imposes an obligation to disclose information regarding the legislator's representation of another person before state agencies, boards, and commissions. Finally, AS 24.60.200 establishes a comprehensive scheme for reporting certain financial transactions.

The legislature clearly knows how to establish a duty to disclose and has done so in several instances. Its failure to include an explicit duty to disclose in AS 24.030(e)(3) is significant. Reading the relevant statutes as a whole, the court concludes that it would be inappropriate to imply a duty to disclose matters within the ambit of AS 24.030(e)(3).

The United States does not contend, nor does the court discern how, any of the disclosure obligations which actually do exist in state law would apply to the circumstances here. The government does contend that read in tandem with the Uniform Rules of the Alaska State Legislature ("Uniform Rules"), AS 24.60.030(e)(3) should be interpreted to impose a disclosure obligation. In particular, the United States relies on paragraph (b) of Uniform Rule 34. That rule governs legislative voting procedures in general. It includes a provision requiring roll call votes to be recorded and a detailed explanation of the use of the electronic voting machine. Paragraph (b) of the rule addresses abstention from voting:

---

[3]AS 24.60.010, *et seq.*

[4]AS 24.60.070(a).

> Abstention. Every member present in the house shall vote unless the house for special reasons permits a member to abstain. All motions excusing a member from voting shall be made before the house divides or before the call for the yeas and nays is commenced. A member requesting to be excused from voting may make a brief oral statement of the reasons for the request and the question of granting permission to abstain shall be taken without further debate. A member may not explain a vote, may not discuss the question while the yeas and nays are being called, and may not change a vote after the roll call result has been announced. Upon division and count of the house of any question a member who is not within the chamber may not be counted. A member may not be permitted to abstain except upon the unanimous consent of the membership.[5]

The rule does not impose a duty to disclose a conflict of interest. Rather, the rule provides a procedure to be used when for any reason a legislator wishes to abstain. Given that neither AS 34.60.030(e)(3) nor Uniform Rule 34 separately creates a duty to disclose, the court is unable to conclude that when they are read together, a duty arises.

The government also contends that every legislator is subject to "an inherent fiduciary duty"[6] to avoid conflicts of interest and a concomitant duty to disclose such conflicts. These salutary propositions may have been recognized at common law, but in Alaska the legislature has decreed that the statutory provisions enacted in AS 24.60 "supersede the provisions of the common law relating to legislative conflict of interest that may apply to a member of the legislature or a legislative employee."[7] Thus, for purposes of Alaska law, a duty must be found in a statute.

---

[5] Uniform Rules of the Alaska State Legislature 34(b).

[6] Doc. 204 at p. 3.

[7] AS 24.60.020(b).

-5-

Case 3:07-cr-00056-JWS   Document 208   Filed 09/04/07   Page 5 of 11

The United States contends that there is a statute recognizing the fiduciary duty and a corresponding duty to disclose conflicts of interest. The statute relied upon is AS 24.60.010(2) in which the legislature declared:

> [A] fair and open government requires that legislators and legislative employees conduct the public's business in a manner that preserves the integrity of the legislative process and avoids conflicts or even appearances of conflicts of interest;

This statute does create a duty, a duty to avoid conflicts or the appearance thereof. It does not, however, contain a provision requiring the disclosure of such conflicts. As with the other statutory provision relied upon by the United States, AS 34.60.010(2) is part of a comprehensive series of statutes governing the conduct of legislators,[8] a series which expressly addresses what a legislator must disclose and which does not mandate disclosure of either defendant's conflict on the facts present here.

Based on the preceding discussion, the court concludes that neither Weyhrauch nor Kott was subject to a duty created by State law to disclose his dealings with VECO and its executives. Thus, the court will grant the motion at docket 193 which asks the court to determine that state law imposes no such duty. The court will also deny the motion at docket 195 with respect to the specific evidence identified in the United States' papers, all of which has to do with a supposed state law duty to disclose.

There are two other topics illuminated in the briefing on which the parties disagree. One is the proposition advanced by the United States that the crime of honest services fraud may be proved by showing something other than an illegal financial transaction, and in particular by establishing that a public official knowingly concealed a conflict of interest.[9] The second is whether this theory of honest services fraud is something outside the original Indictment which was only disclosed to defendants on or about August 24, 2007.[10]

---

[8]AS 24.60.010, *et seq.*

[9]Doc. 195 at p. 4.

[10]In his memorandum at docket 194, August 24 is the date when Weyhrauch says the new charge was added. It is not clear why Weyhrauch points to August 24. The government's

The court turns first to the question of whether the Indictment is sufficient to alert the defendants to the alternative theory of the crime. It is. In language common to Counts 6 and 7, it is alleged that the scheme underlying the wire fraud charge against Kott and the mail fraud charge against Weyhrauch was to deprive the State of Alaska of its right to honest services from each defendant "free from deceit, self-dealing, bias and **concealment**."[11]

Next, it is necessary to consider whether proof that a legislator knowingly concealed a conflict of interest in the course of discharging his duties may be used to support an honest services fraud conviction. The United States cites cases from several circuits which it says hold that it can. The court agrees that proof that an existing duty to disclose was violated may support an honest services fraud charge. However, as the court has already explained, Alaska law imposes no such duty with respect to the facts here. Thus, the government may proceed on this theory in this case only if federal law may be used as the source of the duty to disclose. No federal statute is cited. The issue thus turns on whether federal common law may be used to provide the requisite duty to disclose.

In a case cited by the government, *United States v. Martin*,[12] the Seventh Circuit rejected the proposition that a fiduciary duty underlying an honest services fraud conviction must be established by state law. The Seventh Circuit's holding is directly contrary to the decision of the Fifth Circuit sitting *en banc* in *United States v. Brumley*[13] which held that any inherent duty must be found in State law.

This court finds the reasoning of the *Brumley* court very persuasive:

> We begin with the plain language of the statute. There are two words "honest" and "services." We will not lightly infer that Congress intended to leave to courts and prosecutors, in the first instance, the power to define the range and quality of services a state employer may choose to demand

---

trial brief discussing the theory was filed on August 29.

[11]Doc. 2 at ¶ 87 (bold emphasis added).

[12]195 F. 3d 961, 966 (7th Cir. 1999).

[13]116 F.3d 728 (5th Cir. 1997) (*en banc*).

-7-

of its employees. We find nothing to suggest that Congress was attempting in § 1346 to garner to the federal government the right to impose on states a federal vision of appropriate services–to establish, in other words, an ethical regime for state employees. Such a taking of power would sorely tax separation of powers and erode our federalist structure. Under the most natural reading of the statute, a federal prosecutor must prove that conduct of a state official breached a duty respecting the provision of services owed to the official's employer under state law. Stated directly, the official must act or fail to act contrary to the requirements of his job under state law.[14]

Further along in its opinion, the *en banc* court added this comment:

We pause to put aside the frequent invocations of citizens' right to honest services. The reference to such "rights" of citizens has little relevant meaning beyond a shorthand statement of a duty rooted in state law and owed to the state employer. Despite its rhetorical ring, the rights of citizens to honest government have no purchase independent of rights and duties locatable in state law. To hold otherwise would offer § 1346 as an enforcer of federal preferences of "good government" with attendant potential for large federal inroads into state matters and genuine difficulties of vagueness.[15]

While there is no Ninth Circuit case directly in point, this court does see in *Brumley* a reflection of the Ninth Circuit's expressed preference to confine mail fraud prosecutions to cases where there has been a breach of an independent duty to disclose to avoid sweeping "almost any illegal act within the province of the mail fraud statute."[16]

Although it recognized the cogent reasons advanced in *Brumley*, the *Martin* court offered no rebuttal. It simply stated that the holding in *Brumley* was contrary to Seventh Circuit precedent and earlier decisions in some other circuits.[17] The cases cited in

---

[14]*Id.* at p. 734.

[15]*Id.* at pp. 734-5 (internal citations omitted).

[16]*United States v. Dowling,* 739 F.2d 1445, 1450 (9th Cir. 1984), *rev'd on other grounds,* 473 U.S. 207 (1985).

[17]195 F.3d at 966.

*Martin* from the Seventh Circuit itself are *United States v. Keane*[18] and *United States v. Bush*.[19] Neither *Keane* nor *Bush* contains any discussion of the issue and each simply cites a case from the Eighth Circuit and a case from the Fifth Circuit to support the conclusion that a violation of state law is not needed for the federal prosecution. Of course, the Fifth Circuit does not survive the *en banc* decision in *Brumley,* and the reasoning in the Eighth Circuit case is conclusory.[20]

The court has considered several other decisions cited by the United States which may sanction use of federal law as the source of an inherent duty to disclose, and finds them less persuasive than *Brumley.* One case cited by the government is *United States v. Woodward*.[21] It involved a legislator named Woodward who was convicted of mail and wire fraud for having accepted illegal gratuities from a lobbyist named Sawyer with the intent to deny his constituents his honest service as their representative. Among other things on appeal, Woodward challenged the sufficiency of the evidence. The First Circuit held that evidence of Woodward's intent was "also demonstrated by his failure to disclose his conflict of interest although he was required to do so."[22] The appellate court pointed out that disclosure was specifically required by state statute. In *dictum*, it also noted that duty to disclose was inherent in a legislator's non-statutory fiduciary duty. The opinion does not make clear whether the inherent duty arises from state law or federal law. In any event, to support the inherent duty concept, the court cited its earlier decision regarding the very man who gave the gratuities to Woodward, *United States v. Sawyer*.[23] The only authority cited in *Sawyer* for the principle that there

---

[18] 522 F. 2d 534, 544-45 (7th Cir. 1975)

[19] 522 F.2d 641, 646 n.6 (7th Cir. 1975).

[20] *United States v. States*, 488 U.S. 761, 767 (8th Cir. 1973).

[21] 149 F.3d 46 (1st Cir. 1998).

[22] *Id.* at 62.

[23] 85 F.3d 713 (1st Cir. 1996).

-9-

is an inherent duty is a still earlier first circuit case, *United States v. Silvano*,[24] where the court explained that the "affirmative duty to disclose material information arises out of a government official's relationship to his or her employer, whether as a public or private employee."[25]  Unfortunately, *Silvano* does not explain whether this fiduciary duty arises from state law or federal law.  *Silvano* relied on the Seventh Circuit case, *United States v. Bush*,[26] for the proposition that there is such a fiduciary duty, but as previously discussed *Bush* offers no rationale.

Another case relied upon by the government, *United States v. Walker*, is from the Eleventh Circuit.[27]  Walker was a Georgia legislator who also operated a variety of businesses.  Among the142 counts in the indictment were several counts of honest services mail fraud asserting that Walker and others "engaged in a scheme to misuse Walker's position as a state legislator for private gain by receiving business favors, including a contract to hire Georgia Personnel workers from Grady Memorial Hospital ("Grady") in return for Walker's help with legislation affecting Grady."[28]  Walker was convicted on all but one of the charges involving Grady.  Walker appealed the Grady convictions on the grounds that both the indictment and the evidence at trial were insufficient.  Addressing the sufficiency of the evidence issue, the Eleventh Circuit referred to the inherent fiduciary duty of public officials citing its own earlier decision in *United States v. deVegter*[29] which in turn relies on *United States v. Lopez-Lukis.*[30]  In neither did the Eleventh Circuit indicate whether the fiduciary duty is a creature of state law, or a doctrine derived from federal common law.

---

[24]812 F. 2d 754 (1st Cir. 1987).

[25]*Id.* at 759.

[26]552 F.2d 641 (7th Cir. 1975).

[27]490 F.3d 1282 (11th Cir. 2007).

[28]*Id.* at 1287.

[29]198 F.3d 1324 (11th Cir. 1999).

[30]102 F.3d 1164 (11th Cir. 1997).

In the interest of space, suffice it to say that when one reads the cases cited by the United States and then goes some distance back through the chain of cases cited looking for reasons why federal law may be used to supply an inherent duty to disclose which supports an honest services fraud charge, one does not find any rationale sufficient to counter the reasoning in *Brumley*.

This court will follow *Brumley*. That means that any duty to disclose sufficient to support the mail and wire fraud charges here must be a duty imposed by state law. As discussed above, in Alaska any common law fiduciary duty to disclose that might be owed by a legislator to the State as his employer has been abrogated and replaced by AS 24.60. That chapter of the Alaska statutes does not include a duty to disclose which could have been breached under the circumstances of this case. This leaves the United States to prove up the honest services fraud charges in this case based violations of the law other than a duty to disclose defendants' dealings with VECO.

## IV. CONCLUSION

For the reasons set out above, the motion at docket 193 is **GRANTED**, and the motion at docket 195 is **DENIED**.

DATED at Anchorage, Alaska, this 4th day of September 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE